5-9-6 Hyatt v. Lee So there is an application that is pursuant to a PTO regulation that we haven't directly challenged in this case, but that was actually of rather recent vintage, or at least vintage post his filing of these applications, that says if you are a parent application, this isn't the way it used to work, but if you are a parent application to an issued patent, we're going to make you available if somebody asks for it and pays a fee. It's a little bit different from we're going to just make it public, but it says if you want to get a parent application. Okay, but if somebody asks for it and pays a fee, they can pop it up on the Internet themselves at that point. There is no rule anywhere that says that. Which is why, although... Which is why you don't have a harm argument. We do. Because the issue here is, was the PTO... Was it okay for the PTO to take this information from other applications, put it into the requirement document, publish it in that file, when we said to the PTO, look, we're not directly challenging your authority to make us provide you this information. There may be other challenges to that. But for present purposes, the issue is we are asking you not to publish information about other applications in this application file. And there's no reason for you to do that. No circumstance justifies that disclosure. In other words, Section 122, what we are trying to do is enforce the right that is granted under Section 122 to say, let's take this seriously. It says that information... And it's always been taken seriously. And there's never been a case like this one that I'm aware of or that the PTO cites, where the PTO takes information about a large number of applications and threatens to publish it on the Internet. There's probably never been another inventor like Mr. Hyatt either. Or at least an applicant. I understand Your Honor's point, but to that... There certainly have been many other circumstances where there have been related applications. Continuation practice is a common thing. And... You're way into your rebuttal time. Just one question. But the information we're talking about here is publicly available. No, it's not, Your Honor. I thought you said it's in an application that is the parent of an issued patent. The patent may now be expired. That's fine. And, therefore, is available if somebody asks for it. I... The agreement that we had reached in order to avoid the need to seek any sort of preliminary relief, and, frankly, it was a courtesy that the PTO granted to ensure that this court and the lower court would have an opportunity... I know where you're going. I may have misspoke. It's not publicly available, but it would be but for this arrangement. It would be... Because the rules would normally make that available. Right. But this case is about us to say this cannot go... This, in this form, cannot go into this file because that would be a disclosure that would violate 122. Yeah. All right. Okay. Thank you, Mr. Panner. Thank you. Mr. Freeman, if you need extra time, we certainly let Mr. Panner have a little extra time. Thank you, Your Honor. May it please the Court, Mark Freeman for the government. Let me just begin with the factual point on which we ended with Mr. Panner. Mr. Hyatt had at least nine issued United States patents that, although expired, expired within the last six years. Indeed, one of them was still alive and kicking when the complaint in this case was filed. It expired in August last year. That means that, as the Court is well aware, Mr. Hyatt could bring suit under those patents for retrospective damages against persons in the United States. That is the reason why we have a rule that if you have said things in the prosecution history of a parent application, that the people get to know that information so that they can understand the scope of the claims and correctly construe the scope of the patentee's exclusive rights. The requirements here, among other things, discuss why these claims violate the regulation that Judge Moore cited, which incidentally tracks the reasoning of the CCPA in the Ian Ray Chandler case and in other cases. Indeed, as this Court knows... That regulation shocked me. I don't know how much you are involved in actual patent prosecution, but I've never seen a one-claim patent, and the regulation almost makes it seem like each patent gets a claim, and if you want more than that, you've got to justify it. Right. I don't see the PTO generally asking people to justify it either, if you file. I think we think that most patent prosecutors, most patent attorneys submit claims. You've got a means-post function claim. You've got a process claim. You've got an apparatus claim. You vary the claims. What you don't do is submit 9,500 claims for a given specification that are virtually identical. The requirements themselves point this out. This is at page 212 of the Joint Appendix in the discussion, in the requirements of the legal justification for the rule, but the requirements point out, look, this Court and its predecessor, the CCPA... Here's one question I have for you about logistics. So we'll go to the Marathon case. So the PTO charges by claim, correct? Yes. So Mr. Hyatt has paid big fat application fees when he submitted 9,500 claims in a particular spec. That's correct. If you're now going to limit him to 600, are you going to refund that money since you are now not going to be prosecuting the other 8,000 whatever hundred? Your Honor, I don't know the answer to the refund question directly. I'd be surprised, though, if we did, and I'll tell you why. Yeah, me too. I mean, but I'll tell you why. I mean, look, that regulation, as Your Honor pointed out, has been on the books since long before even the earliest possible application. Yes, but the whole reason for making people pay for extra claims is the time that it will take the office to prosecute them. And if you're going to, I'm not saying you haven't spent lots of time on this, Mr. Hyatt, but if you're going to refuse to prosecute his claims, shouldn't the man get his money back? I don't think so. And let me tell you why. I mean, if you just take a typical double patenting rejection... Okay, if I walk into McDonald's and order two burgers and I hand them the money for two burgers and they hand me one, do you think I'm going to walk out without the other half of the money that I gave them? I don't think so, Your Honor. No, so why should Mr. Hyatt? Because when you have a rule that says you may not present unduly multiplicitous claims, and you come in and submit this many claims, you have broken the rule and we may enforce that rule. No one here, including Mr. Hyatt, is challenging the validity of that principle. And the issue in front of us is whether the government, whether the PTO... So your argument to me is we did prosecute these. We decided they were unduly multiplicitous. Well, we haven't even decided that, to be fair, Your Honor. What the requirements say is these sure appeared to us to be identical or nearly so. Tell us why we're wrong. And incidentally, that underscores our point that if he comes back, imagine how he responds to this. In his petition to the agency, he said Section 122 encompasses his response to the requirement as well. If he comes back and says, no, no, you're wrong, you say claim 300 here is identical or similar to claim 287 over here, but actually you misunderstand. When I use this word, I meant a different thing, and that's patentably distinct. Of course, the public is entitled to that information. And all that we're saying in this case is that PTO gets to treat these office actions like any other office action. And Mr. Patter just stood here... But these aren't called an office action. Well, requirements. And requirements, as this Court held in a case not coincidentally called Hyatt v. Dudas, is the sort of thing that an examiner can issue and that a patent applicant is required to respond to. Now, there's no doubt, we think, that the agency is entitled to do this, but that's not this case. What this case is, as Mr. Panner said, is about whether the agency can treat what is, for purposes of this appeal, a concededly valid agency action like every other requirement or office action and put it in the file of patent applications and, under long-standing, unchallenged PTO rules, make them available to the public in the ordinary course. If Mr. Hyatt wants to challenge the validity of those requirements, which he has done incidentally... But this isn't about ordinary course because your entire right to do this is under your special circumstances exception. And so this isn't ordinary course. And so wouldn't one of the special circumstances, for example, be what is the relevant harm? Now, Mr. Hyatt might not be harmed because, quite frankly, at least one speck in all of these chains has already been disclosed and he can't claim broader than the speck and you might have just all the harm on your favor in this case. Right. But wouldn't one of the relevant factors be the extent of what you're seeking to disclose and whether that information is or is not sort of already publicly available in some other way? Those are the things that the director took into account, Your Honor, but we don't think they're judicially reviewable. Well, yeah, but suppose I think... I'm sorry. Suppose I think special circumstances is judicially reviewable. Wouldn't that be the sort of thing that would be part of the relevant inquiry? Since there is a general rule, you can't disclose it. You can in special circumstances. Wouldn't, if you're able to show that there really isn't any sort of generalized harm here because everything is already disclosed or otherwise available, that would be the kind of thing that would support your decision. Certainly in this case, the director thought those things were relevant and made exactly that point in her decision which appears on page 233 of the Joint Appendix. But I want to go back just to the statutory point. I'm sensing the skepticism, but give me a chance here. One thing, Mr. Hyatt treats this statute on the special circumstances point as though it says information in patent applications may be disclosed if it's necessary to carry out the provisions of an act of Congress or in special circumstances. But that's not what it says. It says or in such special circumstances as may be determined by the director. And there is a long historical... Isn't that possibly just an articulation of who ought to be the one to figure out the special circumstances? Your Honor, I think... Because there's lots of things in the PTO statute. For example, if you want an exception to some sort of rule, who do you petition? The statute says petition the director for a special exception. That's true. Stuff like that. Right. And there are many places in the statute where Congress has given the director discretionary authority. Among other things, how to treat a patent application. And do you think all of those are unreviewable? No. Just because it was specified who has the authority to think them up? Your Honor, this particular locution has a long historical pedigree. And we cite in our brief the George S. Bush case from 1940. That's the case cited in the Attorney General's Manual that's been understood to be informative in construing the APA. What the paragraph in that case, that critical Supreme Court case, explains is that there is a difference. The Supreme Court recognized it in Webster v. Dove as well. Between saying a circumstance is objectively present or Congress saying when a particular officer believes in that officer's discretion that that particular circumstance is present. That is a long... I think the D.C. Circuit has called that distinction one of ancient and historical lineage. And in neither of those cases was there a general rule and then an exception. That really changes the dynamic of this case as compared to these. Congress expressed a very clear intent in the form of 122 that applications be maintained incompetent. And then carved out exceptions which feel to me like they're meant to be quite narrow. Necessary for an act of Congress. Right. And I think that... And then in special circumstances it seems to me I want that to be like this unwieldy, really broad thing. And it has not been construed or applied that way, Your Honor. But if it were, you're suggesting nobody could stop her. She's got free reign. At least not on a non-constitutional basis. And let me just point to this court's precedent, for example, in... But do you recognize the distinction that I'm drawing, which I think is significant, between the two cases you cited, which I grant you conveyed authority to a particular person to set out circumstances, and this case where Congress expressed a general rule and then set out two narrow exceptions, one of which it gave authority to somebody to articulate. I don't agree, and let me explain why. First, let me point to this court's decision, the only one I could find recently applying 701A2. That's the Allman Brothers case concerning a statute that allowed the U.S. Trade Representative to enter into certain agreements concerning softwood lumber with Canada. And in that statute, if you just look at the case, the statute laid out a number of requirements that any such agreement had to comply with. Some of them were justiciable. In fact, the court in the Allman Brothers case went ahead and addressed the challenger's arguments to some of them. But one of them was that the agreement be satisfactory to the U.S. Trade Representative. And the argument in the case was very much like the argument Mr. Panner made this morning. The applicant said, look, what is the purpose of this? It is to provide remedies to injured U.S. industry. I know that it says satisfactory, but it must mean satisfactory in a way that accomplishes the purposes of the statute. And this court said, we're happy to talk about your arguments on the other score because we agree with you that that was meant to be reviewable. But that part is committed to agency discretion by law. And that follows from the text of Section 701 of the APA. Section 701 of the APA says, this chapter in the APA applies except to the extent that agency action is committed to agency discretion by law. So Congress contemplated in the APA. Doesn't the ABA also afford a strong presumption of reviewability and didn't Justice Kagan really reinforce this last week? Yeah, I saw the mock mining case, Your Honor, and I'm happy to address it. I actually also expected a 28-J letter. That case, I think, reinforces the reasons why we're correct here. That involved, as you know, the power of their obligation on the EEOC to conduct conciliation before suing an employer on behalf of an employee. It didn't say, conduct such conciliation as the administrator of the EEOC deems appropriate. What it said was, you must conciliate. And the Supreme Court said, that is justiciable. Justice Kagan also went on to say, though, that even that, because there is no standard in the statute for understanding what conciliation means, just like there's nothing here about what is special, all the court was willing to do was to say, did the fact of conciliation occur? And the court stresses, as Your Honor is aware, that it would not look at the underlying substance. It was just going to check the box to make sure it happened. So even there, where the court said, we agree it's justiciable, the statutory language was different, and the court emphasized even there how deferential the review was going to be and they were not going to look at the content. So I think the most that Mr. Panner gets, or Mr. Hyatt, excuse me, gets out of that decision, even if the court were to review it for all that it is worth, is that if the special circumstances determination is subject to review in an APA action, it is only to make sure that the director has, for example, not decreed that all patents are special circumstances, but has identified a disagreed subset and will not look at the underlying contents of that determination. And you're saying that the director can select any set of circumstances whatsoever? Well, I think that follows from the committed to agency discretion by law, Your Honor. That is our principal submission. But doesn't that, in effect, totally negate the first part of the statute which says that the patent office shall maintain these things in confidence? No, I don't think it would, Your Honor, in the same way that the statute in... It opens up every applicant to what that applicant would certainly argue is arbitrary action by simply, by virtue of the fact that the director just selects on a whim some class of cases that will be published or some such thing. Your Honor, on a whim might raise a constitutional question, and Webster v. Doe made clear that constitutional claims are not foreclosed. But let me answer your question. That sort of hypothetical, of course, comes up in every committed to agency discretion by law case. I mean, there were arguments in Webster v. Doe that this would mean that the director of the CIA could fire any person for any reason with unreliable discretion. And you know what? I'd be okay with that, right? It's the CIA. It's like you just cannot analogize that Congress intended the PTO to have unfettered discretion when it comes to rejecting patents and analogize that to the CIA and Homeland Security's decision about what is in the interest of national security. You can't make that analogy. I appreciate that argument. Please withdraw the analogy. I appreciate the point, but if I may make what I think is the subsidiary point, which is valid. The court in that case said there is a difference between saying that a person may be fired when it is necessary and advisable in the interest of the United States or what the statute actually said, which is when the director deemed it necessary and advisable in the interest of the United States. And in so holding, the court invoked the longstanding tradition that we have cited here that is not limited to national security cases. And furthermore, we don't need to equate the PTO with a national security agency, which, let me be clear, I am not equating the PTO with a national security agency. We don't need to equate the PTO with a national security agency to recognize that Congress used in Section 122 a particular locution that it does not use, to my knowledge, anywhere else in the Patent Act and which has a historical tradition attached to it. Just to be clear, is there any case that you have cited or can point me to which didn't just have a to-the-director kind of discretionary allocation but which had as a predicate a general rule against that? Because you see, for me, it's about the structure of the statute and how the structure of this statute does differ quite substantially from every single case I could find where anyone analyzed it and decided it was unreviewable. In none of those cases could I find an example where the exception was part of a general rule. Let me say two quick things on that and then I'll just move off that point. The first is, I think the Allman Brothers case from this court does do that because it provided that the agreements entered by the U.S. Trade Representative were reviewable, anticipated that they would be reviewed, but provided that a particular determination under that statute was not reviewable. Secondly, I just think that... No, no, no, no, no, no, no. That's not the same. That's not an exception to the general rule. That is an exception to reviewability, but that has nothing to do with the merits here. You see the difference. Well, I do see the difference, but again, perhaps we just are not going to see eye to eye on this, but I think the contemplation of Congress in Section 701 of the APA is that the APA applies, except to the extent that particular questions have been withdrawn from judicial cognizance. So here, we're not arguing that, although the district court, and we've withdrawn this, the district court gave us more than we asked for and said the necessary to effectuate an act of Congress provision was not subject to review either. We didn't make that argument below, and we're not making it here. The special circumstances provision, though, is one that is withdrawn from judicial cognizance in our view. But let me leave that and say, if you think it is subject to review, then I think you ought to apply a filter much like Justice Kagan just did last week and say, look, if it is subject to review, it is subject to very deferential review to make sure that the basic... Well, if it is subject to review, wouldn't the APA counsel that the appropriate standard is arbitrary and capricious? If you want me to follow the APA, shouldn't I go all in on it? Well, I think that when we ask what is arbitrary or capricious, we still have to apply a substantive filter to decide what makes something arbitrary and what makes it capricious. The State Farm case, which sets out the basic meaning of arbitrary and capricious review in the Supreme Court, says that the question is whether you've considered the relevant statutory factors and considered the relevant facts. Well, we don't have any relevant statutory factors. That's part of our point. What is special is not... It's not a term of art in the Patent Act. It's nowhere defined by Congress. And one thing it doesn't say is the standard that Mr. Panner wants us to discuss this morning. It doesn't say balance the needs for disclosure against the needs for confidentiality. It doesn't say it has to fulfill some particular statutory requirement. It just says special. And if we're going to review... Of course, our principal submission is that partly for that reason. It's not subject to review. But if we're going to review special circumstances, we should be doing it like Justice Kagan just explained in the mock mining case, applying the question, did the director identify something called special circumstances that is perhaps smaller than the whole? And beyond that, there isn't really a basis in the Act for asking anything more. On the merits, just as I may, I don't think Mr. Hyatt has explained that his prosecution history practices his prosecution practices are, I think the phrase he uses in his brief is unusual. We can debate whether that's an understatement. It certainly is within the discretion of the director to deem them special and make sure that the public has access to the basis on which the agency examines its applications and its responses thereto. Can I ask you another? I know you want to sit down, but let me ask another question. I'm happy to stay as long as you need. How could there be 115,000 claims that were filed prior to June 8th of 1995? They're still kicking around. I don't understand. Your Honor, I would welcome the chance to litigate that question in open court. I'm constrained in what I can say on that score. I can tell the court... Well, the record suggests that some of the applications may have been stayed while others went through board or a federal circuit review. As far as I know, we're not that slow. 20 years is not my fault, right? Your Honor, no, no. We don't suggest it's the court's fault, and I don't suggest that PTO is entirely blameless on this, but I think that if you look at the requirements, one of which, as Your Honor noted, appears at page 162 in the appendix... Well, Mr. Hyatt is responsible, and there is some suggestion, and I won't go into details, but there is some suggestion of requirements that there were some amendments and other things that may have been a bit of a moving target. A little... Then why aren't you nailing them to the wall with prosecution latches? We handed it to you. Why aren't you using it? Why aren't we seeing those cases? Why are you still kicking around over this procedural stuff, and why don't you just knock these things out so we don't have to deal with all these procedural things? No one wants to do more than we do, Your Honor. We also are aware that we have a need to justify, under this court's precedence, the actions that we take. That's part of the reason the requirements are so extensive and detailed in this case, and... Do you think you couldn't justify the fact that an application was pending from June of 95 and had 115,000 claims and was a moving target? Do you think you could... Are you suggesting to me you don't think you could justify a case for prosecution latches? Your Honor, whatever you write in this case, please do not say that we don't think that is true. We will take whatever steps we can. We have assigned 14 full-time examiners to deal with Mr. Hyatt's applications, and we are... I think if you look... Poor 14 people. How can 14 people do 115,000 claims? This is why... You're going to get a big bump. This is... It has to meet whatever quota they've got set for, like, the next 10 years. I fully support that, Your Honor. The... I do think... The office, for some reason... The office, for some reason, shies away from the undue multiplicity rejection. Thank you for raising this point, Your Honor. Because I can remember 50 years ago when I was an examiner, long time, undue multiplicity was a rather frequently used rejection. If somebody came in with 30, 40, 50 claims and they were very much alike, they would be rejected as unduly multiplied, and at least there would be some interaction. I agree with you, Your Honor. Without committing the PTO to anything, part of the point of the requirements is to make that sort of rejection possible. If you look at page 212 of the Joint Appendix, the agency explains, citing cases like Flint and others, where this court and its predecessor have said that the agency didn't adequately justify an undue multiplicity rejection. Here we are saying, these sure seem unduly multiplicative to us. Explain why we're wrong. And we obviously have the power to ask for that, and if the answer is unsatisfactory and I don't want to prejudge it, then it may well be that the PTO chooses to reject on that ground. But what Mr. Hyatt can't do is say, you know, you can't include the claims from co-pending applications to make out your undue multiplicity objection because that violates Section 122. Okay, so indulge me. Judge Lerndenhan, in 1915, nobody cited this to me, but it's one of my favorite quotes and I don't get to use it very often, but boy, it actually applies here. The court should discourage practice which permits 48 claims on a simple and perfectly obvious machine like this. Such claims violate the very purpose of any claims at all, which is to define the forbidden field. In such a waste of abstract verbiage, it is quite impossible to find any guide. Ah, here's my favorite part. It takes the scholastic ingenuity of a St. Thomas with the patience of a yogi to decipher their meaning. I would love to have the opportunity to file a brief in which I quoted that case in the merits. It is, regrettably for me, not this case, but I sympathize with the sentiment and it is the reason why we are taking what we think are very appropriate examination steps to bring this arduous process to a close. Okay, we've got to bring this argument to a close. I realize that some of our decisions may have discouraged the Patent Office from making these undue multiplicity rejections, but I think it's something that certainly should be revisited. And the agency's requirements and the compliance responses thereto to that end should be available to the public. Mr. Panner, you have some rebuttal time. We'll definitely give him this full five minutes and if you really feel the need to go over, I'll certainly let you do that because we did with your opposing counsel. I'm grateful, Your Honor. Let me start out by suggesting that Mr. Freeman's attempt to portray the prosecution practices here in a way that is unfavorable, and I understand that he has ample fodder in the record for doing that, actually underscores exactly why this court should be careful in this case to ensure that the PTO has justified the disclosure that it threatens here. Mr. Hyatt appears to be in the office a disfavored applicant for whatever set of reasons, his fault, not his fault. He would violently disagree with the idea that the delay in these applications can be laid at his door. An applicant is required by the office to respond to office actions within three months. These applications have been suspended 2,000 times for a total of 1,000 years by the office. So the idea that this is to be laid at his door, and that's exactly why the PTO could not do what Your Honor suggested because the PTO, it's been Mr. Hyatt's consistent effort to get applications adjudicated that is demonstrated by the record that will eventually emerge. But you have to agree that the fact that he is filing hundreds and hundreds of claims, many of which are seemingly identical, is not aiding the Patent Office in getting these things examined. I understand that, Your Honor. I don't think that I would gainsay the idea that this is a challenge for the office and that it is certainly to be hoped that a process can get underway that will lead to resolution of this because that's in Mr. Hyatt's interest and the government says that it's in its interest as well. Part of the problem is the fact that the Patent Office, as I see it, is trying in these requirements that they issued, is trying to sort of inform Mr. Hyatt why they are having such a problem and why they need to sort this all out. Maybe from Mr. Hyatt's point of view and this confidentiality issue, it would have been better not to put all these claims in these requirements. But I think the Patent Office was doing that only because they felt if they didn't spell out what the problem is and what the Patent Office is facing, that they wouldn't make any progress with Mr. Hyatt. And I absolutely appreciate that, Your Honor. And we have not taken issue with the requirements, the form of the requirements, what is being in this case. We assume that the requirements are going to be there. The issue that we have is simply that by virtue of operation of a regulation that is expressly subject to the statutory duty, there is information. None of this information is about an issued patent. I do want to emphasize that the error, I think, that Mr. Freeman said two things that really made my ears prick up. Because one of them was when he was discussing, Your Honor, with Judge Moore about this question of there's a right and then exceptions. And he said, well, the statute says that the statute doesn't say it's not an authorization to the office to disclose information. It's a grant of a right with limited exception. But that then goes over to the second, what I believe to be misstatement in his argument that I think really should give the court pause. He said, the public is entitled to that information to see how Mr. Hyatt... Well, to be clear, I understood his argument as being the public is entitled to the information, meaning if there is a patent out there that Mr. Hyatt may assert against someone, that the public is entitled to the entire chain of the prosecution of that patent, including the parent and anything that happened in that parent. And I think that that is true. It is unequivocal. And I don't think that you would disagree with that. But not in this... There is no assertion, Your Honor, in this circumstance, the assertion by Mr. Freeman that there is a potential infringement claim out there is a new one. It wasn't asserted in the brief. We didn't have an opportunity to respond to it. But the point is that no one... There is a regulation, after all, which says that in a circumstance where there's a parent application, someone can pay a fee and get the application filed. That is, in fact, what 1.14 Romanette 5 says. I'm going to forget all the different Romanettes. But the point is the regulation that they rely on, which says that the parent should be made available, says it's made available if someone comes in and pays a fee. So anybody who says, hey, I'm being sued for infringement, they can pay a fee. But what the government cannot plausibly claim is that there's a patent out there that is not expired as to which this information has any relevance at all. And none of the claims that are at issue have issued in a patent. And so that's why what the court ought to be doing, I agree with, Your Honor, that the arbitrary and capricious standard in light of a statutory purpose and what has been in other statutory contexts adopted as a plain reading of these sorts of exceptions is to require the office to make a showing that the disclosure that is contemplated is tailored to address, I've used the word tailored, which isn't quite the word that I want, but that the disclosure that's contemplated is intended and reasonably will serve an interest under the statute, which I submit that when you peel away the generality about the importance of disclosure with regard to the scope of issued patents is not satisfied here. Thank you, Mr. Panner. Thank you for the extra time, Your Honor.